NOT FOR PUBLICATION                               [Docket No. 22]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MARY HETTINGER, | |
| Plaintiff, | |
| v. | Civil No. 13-cv-1010 (RMB/AMD) |
| SPEEDLINE TECHNOLOGY, INC., et al., | **OPINION** |
| Defendants. | |

Appearances:

Andrew Rossetti, Esquire
Rossetti & Devoto, P.C.
20 Brace Road, Suite 115
Cherry Hill, NJ  08034
     Attorneys for Plaintiff

Meaghann Porth, Esquire
Campbell Campbell Edwards & Conroy, P.C.
1205 Westlakes Drive, Suite 330
Berwyn, PC 19312
     Attorneys for Defendant


**BUMB,** UNITED STATES DISTRICT JUDGE:

**I.   Introduction**

     This matter comes before the Court upon a motion by

Defendant, Speedline Technology, Inc.'s ("Defendant"), for

summary judgment under Federal Rule of Civil Procedure 56(a) and

to partially exclude the testimony of Plaintiff's expert.

[Docket No. 22].  For the reasons set forth below, Defendant's

motion shall be denied.

## II.  Factual Background[1]

### A) The Wave Solder Machine

The instant action stems from a serious workplace accident
wherein the Plaintiff, Mary Hettinger, suffered the loss of her
entire left thumb and the tip of her right thumb.  Plaintiff
worked at her employer, K-Tron Electronics ("K-Tron"), for over
twenty years as an assembler building circuit boards.
Defendant's Rule 56.1 Statement of Facts ("DSOF") and
Plaintiff's Response ("PRSOF") at ¶ 7.  To complete this task,
Plaintiff used the Econopak Plus Wave Solder Machine ("wave
solder machine"), which was designed and manufactured by the
Defendant, Speedline.  Plaintiff's Supplemental Statement of
Facts ("PSSOF") and Defendant's Response ("DR") at ¶ 1.[2]  When
the machine is done being used, it must go through a shutdown
procedure which consists of, in relevant part: 1) opening the
doors of the machine; 2) going to the front of the machine and
inputting the roll-out commands into the machine's computer; 3)
the solder pot then rolls out until it hits a limit switch and
stops; 4) than the operator covers the solder pot with a thermal

---

[1] Where there are significant factual disputes between the
parties, the facts should be construed in favor of the non-
moving party. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir.
2004), cert. denied, 543 U.S. 956 (2004).
[2] Speedline sold K-Tron the machine in 2000 along with a
thermal canvas blanket, an instruction manual and an
installation manual.  DSOF & PRSOF at ¶ 5.

2

blanket[3] and brings it back into the machine.  PSSOF & DR ¶ 2.
Once the solder pot has fully extended out of the machine, the
space between the end of the pot and the wall at K-Tron is
approximately 13.5 inches.  DSOF & PRSOF at ¶ 2.

The movement of the solder pot out of the machine is
motorized, and a part of the machine called the "roll-out shaft"
rotates while the pot is moving out of the machine.  DSOF &
PRSOF at ¶ 3 PSSOF & DR ¶ 4.  Employees like Plaintiff also
called the roll-out shaft a "spindle." PSSOF & DR at ¶ 5.  While
Speedline argues that the shaft at the time of the accident was
"smooth, unthreaded and cylindrical," Plaintiff contends that
the shaft had areas of rust and a hexagonal head on the end, as
demonstrated by photographs supplied by Plaintiff.  PRSOF ¶¶ 3-
4.

During the design of the machine, Speedline did not test
the roll-out shaft to determine whether it presented an
entanglement hazard, and the instruction manual for the machine
contains no instructions on how to apply the thermal blanket to
the solder pot. PSSOF & DR ¶¶ 8-9.  It is undisputed that there
were no instructions in the machine's manuals on when to replace
thermal blankets, the average life span of such blankets or
warnings about the roll-out shaft.  Id. ¶¶ 12-14.

---

[3] The parties use the terms blanket and canvas
interchangeably.

For over ten years, Plaintiff shut down the wave solder machine every night without incident. [DSOF & PRSOF ¶ 10]. It was Plaintiff's practice to stand behind the back of the machine and wait as the molten solder pot moved out of the back of the machine toward her. <u>Id.</u> ¶ 11. Plaintiff's supervisor, Vicki Trimbach stated that it was dangerous to stand behind the pot as it was moving out of the machine because of the hot solder. <u>Id.</u> ¶ 13.

B) <u>September 29, 2011</u>

On September 29, 2011, Plaintiff was working the night shift at K-Tron. PSSOF & DR ¶ 30. As she was shutting down the machine, Plaintiff stood behind the pot waiting it for it to come out. <u>Id.</u> ¶ 31. She was holding the thermal blanket (which she called the "canvas") with both hands. <u>Id.</u> The parties dispute exactly how the accident occurred that resulted in Plaintiff's injuries. According to Plaintiff, she was "holding the canvas" and the machine "spindled out" and "caught" the canvas. PRSOF ¶ 33 & 36. Plaintiff testified that the when her hands were in the canvas, the canvas got sucked into the machine on the roll-out shaft. <u>Id.</u> ¶¶ 37 & 42-43. It is undisputed that Plaintiff pulled "really hard" to remove her hands/thumbs from the canvas and heard a pop. PSSOF & DR ¶¶ 38-39. It is further undisputed that after removing her hands from the

canvas, the top of Plaintiff's right thumb was coming off and her left thumb had severed.  Id. ¶ 39.

While Defendant does not deny the outcome of the incident, it denies Plaintiff's version of how it occurred.  Instead, Defendant contends that the thermal blanket did not become wrapped around the roll-out shaft, avers that Plaintiff has no memory of how the incident occurred and that she "does not actually know if the blanket got caught on the sooth unthreaded shaft."  DSOF at ¶ 14 & 18.

Witnesses and Incident Reports

Shannon Marie Hall ("Hall") is a K-Tron service mount operator and was working on the night of the incident. PSSOF & DR ¶ 45.  While Hall did not see the accident occur, she did see Plaintiff shutting down the machine while standing behind the machine near the wall.  Id. ¶ 49.  After the incident, Hall saw Plaintiff's hands "cupped against her body."  Id. ¶ 46.  The parties agree that Plaintiff told Hall that the blanket "got caught on the shaft and [her] hands twisted up in the blanket." PSSOF & DR ¶ 53.  While Plaintiff contends that Hall actually saw the blanket spinning on the shaft after the accident, PSSOF ¶ 54-55, Defendant contends that Hall has no recollection of what actually occurred that night, including whether the blanket was spinning on the shaft.  DR ¶ 54-55.  During her deposition,

5

Hall stated that she could picture the blanket spinning on the shaft. PSSOF ¶ 54-55.

After the incident, K-Tron quality assurance/manufacturing process manager, Vicki Hart Trimbach, visited Plaintiff in the hospital.  PSSOF & DR ¶ 58-59.  Trimbach testified that while Plaintiff did not say the blanket got caught on the shaft "because she wouldn't have called it that," she was "pretty sure [Plaintiff] said the blanket got caught and she tried to pull it out."  [DR ¶ 60 citing Trimbach Dep. Tr. at 72-74].  In addition, Plaintiff told Keith Kressley, the general manager of K-Tron, that the blanket got caught in the machine and "it started to twist her."  PSSOF & DR ¶ 73-76.  K-Tron's Human Resources Manager completed an "Accident Investigation Report." Pl.'s Ex. D.  The report states that "[t]he 'blanket' got caught in the portion of the screw shaft that sticks out which would be used to move the pot manually."  Id.  Following the incident, K-Tron put a guard over the protruding portion of the roll-out shaft and that guard has not changed the manner in which the machine functions.  PSSOF & DR ¶ 66-67.

The Occupational Safety and Health Administration ("OSHA") reviewed the incident and interviewed Plaintiff.  Id. at ¶¶ 68-69.  The results of the OSHA investigation state that "the canvas mat which the employee was holding became entangled in the metal rotating bar at the rear of the . . . machine."  Pl.'s

Ex. E.   The report further states that "[t]he results of the inspection concluded that the employer should have had guarded the metal rotating bar at the rear of the . . . machine."   Id.

Plaintiff's Expert

Plaintiff's expert, Steven Batterman, Ph.D., found that Plaintiff "sustained her injuries when the thermal blanket she was holding was snagged by the rotating roll-out shaft, began twisting around her hands, and she attempted to yank herself free."  PSSOF ¶ 81.  Batterman's opinion is based on the nature of Plaintiff's injuries, the testimony of Plaintiff, the testimony of Ms. Hall, and the OSHA report.  Id. & PRSOF ¶20. Dr. Batterman never put a blanket near the rotating shaft to see whether it would get caught, stating that such a test would not be relevant, as one needs the machine under actual conditions of use.  Id.  In his report, Dr. Batterman stated that the design defect of the solder machine could be eliminated if the roll-out shaft is either guarded or if the length of the shaft is reduced so it does not protrude through the door of the stand.  Pl.'s Ex. C at 7.  He also found that machine defective because it neither contained a warning telling the user not to stand behind the machine during roll out nor an instruction on when the thermal blanket needs to be replaced.   Id.

<u>Defendant's Expert</u>

Defendant's expert, Donald Allison, Ph.D., performed testing on an exemplar stand and rotating shaft using a new blanket, a frayed blanket and other materials, which, he found, did not get caught.  DSOF ¶ 28.  Plaintiff contends that Allison's jeans began to entangle on the shaft.  PRSOF ¶ 28.

## III. Applicable Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." <u>Id.</u>  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Anderson</u>, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if

8

those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them.  Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228

9

(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## IV. Analysis

Defendant contends that summary judgment is appropriate in this case because "nothing is known about how the accident occurred, which results in a lack of any evidence making it possible for Plaintiff to prove causation, an essential element of both her design defect and failure to warn claims."  Def.'s Br. at 1-2.  In addition, Defendant avers that Plaintiff's expert report is speculative and subject to exclusion under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence.  Finally, Defendant contends that Plaintiff's failure to warn claim fails because the risk of standing behind the solder machine is "open and obvious."  Id. at 2.

In its reply brief, Defendant argues for the first time that several averments propounded by Plaintiff are supported by inadmissible hearsay.  As an initial matter, "[w]here a reply brief raises new arguments in support of a motion for summary judgment, the district court is justified in disregarding them." Gucciardi v. Bonide Prods., No. 12-932, 2014 U.S. Dist. LEXIS 85509, at *24 (E.D. Pa. June 24, 2014).  Even if this Court were to entertain these arguments, however, they are not outcome

determinative here for reasons set forth in more detail below.
Certainly, a motion for summary judgment must be opposed via
"admissible evidence containing 'specific facts showing that
there is a genuine issue for trial.'" Vitalo v. Cabot Corp., 399
F.3d 536, 542 (3d Cir. 2005)(quoting Fed. R. Civ. P. 56(e)).  As
discussed infra, the Court has sufficient grounds upon which to
deny the summary judgment motion without rendering an opinion on
the purported hearsay evidence.  Certainly, any objections to
hearsay contained in testimony of alleged witnesses or the OSHA
report may be dealt with pursuant to appropriate motions in
limine prior to the time of trial.  See Rojas v. County of
Passaic, No. 04-3048, 2007 U.S. Dist. LEXIS 16873, at *19
(D.N.J. Mar. 9, 2007)(finding hearsay objections premature and
instructing defendant to renew such arguments via in limine
motion prior to trial).

    Causation Issues and Expert Testimony

    In order to prevail on her design defect claim, Plaintiff
must prove that "(1) the product was defective; (2) the defect
existed when product left the hands of the defendant; and (3)
the defect caused [an] injury to a reasonably foreseeable user."
Jurado v. W. Gear Works, 131 N.J. 375, 385 (N.J. 1993). "Whether
a product is defective depends on whether it 'is not reasonably
fit, suitable and safe for its intended or reasonably
foreseeable purposes.'" McGarvey v. G.I. Joe Septic Serv., Inc.,

11

293 N.J. Super. 129, 142 (N.J. App. Div. 1996) (quoting <u>Jurado</u>, 131 N.J. at 385). New Jersey courts use a seven-factor balancing test to determine whether a product is fit for its intended uses, considering:

> (1) the usefulness and desirability of the product; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product; (4) the manufacturer's ability to eliminate the danger without impairing the product's utility; (5) the user's ability to avoid danger by due care; (6) the user's anticipated awareness of the danger considering general public knowledge or the obvious condition or the existence of suitable warnings or instructions; and (7) the feasibility of the manufacturer's spreading the loss by setting the price or carrying liability insurance.

<u>McGarvey</u>, 293 N.J. Super at 143. With respect to her failure to warn claim, Plaintiff "must establish all the same elements required for an action based on a defective product." <u>Mathews v. Univ. Loft Co.</u>, 387 N.J. Super. 349, 362 (N.J. App. Div. 2006)(quoting <u>London v. Lederle Labs.</u>, 290 N.J. Super. 318, 326 (N.J. App. Div. 1996), <u>aff'd as modified by</u> <u>Batson v. Lederle Labs.</u>, 152 N.J. 14 (1997)).

Again, Defendant contends that both Plaintiff's design defect and failure to warn claims founder for lack of adequate evidence of causation. In the instant matter, an expert opinion is required to prove this vital element of causation for both the design defect and failure to warn claims because the wave solder machine, including the roll-out shaft, constitutes a "complex instrumentality." <u>See</u> <u>Toms v. J.C. Penney Co.</u>, No. 05-

12

2582, 2007 U.S. Dist. LEXIS 72659 (D.N.J. Sept. 28, 2007)(expert needed as to causation on failure to warn claim); Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 331-32 (N.J. App. Div. 2004)(requiring the use of expert testimony in design defect products liability case involving complex instrumentality); Rocco v. NJ Transit Rail Operations, 330 N.J. Super. 320, 341, 749 A.2d 868 (App. Div. 2000)(finding locking mechanism on railroad car's sliding doors to be a complex instrumentality requiring expert testimony); Sparrow v. La Cachet, Inc., 305 N.J. Super. 301, 702 A.2d 503 (App. Div. 1997)(finding a facial machine that allegedly caused burns to a plaintiff's face and neck to be a complex instrumentality).

With respect to Plaintiff's expert, Defendant argues that his opinion is speculative and thus subject to exclusion under Federal Rule of Evidence 702[4] and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Rule 702 "requires that only reliable testimony, offered with a sufficient factual

---

[4] Rule 702 states:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

basis be admitted." <u>JVI, Inc., v. Truckform, Inc.</u>, No. 11-6218, 2012 U.S. Dist. LEXIS 181769, at *10 (D.N.J. Dec. 26, 2012). As stated by the Third Circuit in <u>Padillas v. Stork-Gamco, Inc.</u>, 186 F.3d 412, 417 (3d Cir. 1999):

> <u>Daubert</u> teaches that "faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>Daubert</u>, 509 U.S. at 592 (footnotes omitted). "The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity--and thus the evidentiary relevance and reliability--of . . . the proposed submission." <u>Id.</u> at 594-95. We have long stressed the importance of in limine hearings under Rule 104(a) in making the reliability determination required under Rule 702 and <u>Daubert</u>. <u>See</u> <u>United States v. Downing</u>, 753 F.2d 1224, 1241 (3d Cir. 1985) ("It would appear that the most efficient procedure that the district court can use in making the reliability determination is an in limine hearing.").

Heeding the instruction of the Third Circuit, and because the resolution of the instant motion requires a <u>Daubert</u> hearing to determine the admissibility of the expert testimony, the Court will deny the motion for summary judgment without prejudice and permit Defendant to renew such motion prior to trial, at which time the Court will conduct a hearing. <u>See</u> <u>Daubert</u>, 509 U.S. at 589 (recognizing district court's role as gatekeeper to ensure that all expert testimony and evidence is relevant and reliable); <u>Padillas</u>, 186 F.3d at 417; <u>Martin v. Blaser Swisslube, Inc.</u>, Civ. No. 03-6116, 2005 U.S. Dist. LEXIS 33859, 2005 WL 3454291, *7 (D.N.J. Dec. 16, 2005) ("A motion for

summary judgment should be denied without prejudice pending the outcome of a Daubert hearing, when disposition of the motion depends on a determination of the admissibility of expert testimony.").[5]

Open and Obvious

In addition to the causation argument discussed above, Defendant asserts that Plaintiff's failure to warn claim also fails because the alleged risk was open and obvious.  "[N]o duty to warn exists where the danger presented by a product is 'open and obvious.'"  Calender v. NVR Inc., 548 F. App'x 761, 764 (3d Cir. 2013)(quoting McWilliams v. Yamaha Motor Corp., U.S.A., 987 F.2d 200, 202-03 (3d Cir. 1993)).  Defendant, citing testimony of Plaintiff's coworkers stating that it would be dangerous to stand behind a moving pot of hot solder, argues that the risk presented by hot solder is open and obvious, obviating the duty to warn.

---

[5] In a footnote at the end of its brief, Defendant assets that Plaintiff's design-defect claim also fails because Plaintiff did not demonstrate that either 1) the product's risks outweigh its utility or 2) the product could have been designed in an alternative manner that would have prevented the accident. Plaintiff's expert did propose an alternative design and the admissibility of his opinion will be subject to a Daubert hearing. Thus, this additional argument does not compel this Court to reach a different result.

In response, Plaintiff contends that it was not the hot solder that injured her; instead it was the exposed roll-out shaft and the application of the thermal blanket. Thus, Plaintiff argues that the danger posed by the pot of hot solder is irrelevant. This Court agrees. Defendant has pointed to no evidence of record demonstrating that the alleged danger from the roll-out shaft was open and obvious and, further, has not shown this Court that a reasonable person would recognize the danger presented by the roll-out shaft. Cf. Calender v. NVR Inc., No. 10-4277, 2012 U.S. Dist. LEXIS 138069 (D.N.J. Sept. 26, 2012)(granting summary judgment on failure to warn claim where danger of falling from attic access panel was open and obvious), aff'd Calender v. NVR Inc., 2013 U.S. App. LEXIS 24769 (3d Cir. N.J., Dec. 13, 2013).


Plaintiff's Testimony

Finally, in addition to the reasons stated above as a basis to deny summary judgment, this Court notes that Defendant's argument that Plaintiff has no recollection of how the accident occurred is unconvincing. Certainly, Defendant cites to portions of Plaintiff's deposition testimony that appear to support the idea that Plaintiff's memory is not entirely clear:

Q: Do you know if, in fact, the canvas got caught on that rotating shaft or on some other part of the pot as it moved out?
A: No. It has to have been the -- the rotating thing.

16

```
     Q: Now why do you say that?
     A: Because that's the only thing that could have gotten
stuck on it.
                    ***
     Q: So you don't have any recollection of the canvas itself
ever wrapping around that shaft, do you?
     A: No, I don't.
```

Def.'s Ex. C, Pl.'s Dep. at p. 108:14-23 & 110: 20-24.

In citing only limited sections of testimony, however,

Defendant fails to cite portions of the Plaintiff's testimony

where she remembers the thermal blanket being caught on the

roll-out shaft.

```
     Q: Did you see the pot come out?
     A: I – I'm trying to think.  All I remember is it spindled
out.  It caught me.  I don't – I really don't remember. It
happened so fast.
     Q: You talk about spindling out.
     A: Well, it rotates out.
     Q: It doesn't rotate out.
     A: Well, it spins around.
     Q: And you're talking about this smooth shaft –
     A: Yes.
     Q: -- right here (indicating)?
     A: Yes, the screw shaft.  Yes.
               ***
     Q: Did you ever see the canvas go into the machine?
     A: All I know was it was sucked – it got caught. It sucked
– my hands into the canvas.
```

Def.'s Ex. C, Pl.'s Dep. at p. 104:5-20 & 108:8-13.

Reviewing this testimony and taking all reasonable

inferences in favor of the non-movant, this Court finds that

Plaintiff's testimony speaks to the issue of causation.  To the

extent Defendant maintains that her recollection is not

credible, any credibility issues are appropriately resolved by a

jury.  Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999)("Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."). Again, this Court will deny summary judgment.  See Patterson v. City of Wildwood, 354 F. App'x 695 (3d Cir. 2009)(holding that accepting one version of testimony over another was in error at the summary judgment stage and that all testimony should be heard by a jury and credibility judged accordingly."); Hayes v. Kenneth Easterday et al., 879 F. Supp. 2d 449 (E.D. Pa. 2012)(denying summary judgment in light of inconsistent testimony).

**V. Conclusion**

For the reasons set forth above, this Court finds that Defendant's motion for summary judgment and to exclude the expert report shall be denied without prejudice.  An appropriate Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated:    October 22, 2014

18